UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF FLORIDA
TALLAHASSEE DIVISION

MARION P. HAMMER,

                                              Case No.

        Plaintiff,

v.

LAWRENCE T. "LOL"
SORENSEN,  CHRISTOPHER
RISICA, HOWARD WEISS,
and PATRICK SULLIVAN,

        Defendants.

_____/

## VERIFIED COMPLAINT FOR INJUNCTIVE RELIEF & DAMAGES

Plaintiff, Marion P. Hammer ("Hammer"), sues Defendants, Lawrence T. "Lol" Sorensen ("Sorensen"), Christopher Risica ("Risica"), Howard Weiss ("Weiss"), and Patrick Sullivan ("Sullivan"), and alleges as follows:

## INTRODUCTION

1.     Hammer is a 79-year-old grandmother and nationally renowned civil rights advocate who has spent the better part of her life protecting the Second Amendment to the U.S. Constitution.  She is considered by many to be the most influential Second Amendment state lobbyist in the United States, and currently serves as the National Rifle Association of America's ("NRA") Florida lobbyist.

2.     Although Hammer's advocacy and prominence on a polarizing political issue have made her a focal point of criticism over the rights and policies she serves to protect, she respects the importance of freedom of speech and robust political debate concerning the policies which she advocates.

3.     However, there is a marked difference between speech and harassment, and there are clearly delineated bounds of human decency that no person can cross by using fear, intimidation, and threats of violence to lash out at and try to silence those with whom they disagree.

4.     "In a society where the expression of opinion is given the fullest protection, public figures must expect criticism that may be untrue, unjustified, or hurtful.   They need not, however, passively accept statements or conduct transcending mere criticism which threaten personal or family safety … [such that]… personal abuse is not in any proper sense communication of information or opinion safeguarded by the Constitution, and its punishment as a criminal act would raise no question under that instrument." *Smith v. State,* 532 So.2d 50, 53 (Fla. 2d DCA 1988) (*quoting Cantwell v. Connecticut*, 310 U.S. 296, 309-10 (1939)).

5.     The Defendants have transcended mere criticism and employed threats, harassment, and personal abuse to try to humiliate and intimidate Hammer in a manner that is utterly intolerable in a civilized community.

6.     No person, regardless of their profession or exercise of free speech advocating for policies with which others disagree, should be harassed, threatened, and denigrated as a "***worthless cunt***," "***whore***," and "***disgusting bitch***," who should "***get to experience a (sic) ammo dildo***" and be the victim of "***100 bullets between [her] eyes***" while receiving unsolicited, graphic photos of gunshot victims.[1]

7.     The hateful and abhorrent harassment and threats Hammer faces are being spewed in an increasingly threatening social climate in which erratic, aggressive, and violent online personal attacks over political views are being condoned and encouraged and can quickly escalate into actual violence.  Hammer reasonably fears that the misconduct directed at her will continue and escalate and that she, her family and possibly others will be the victims of physical violence if the abuse she is suffering is not stopped.

8.     Hammer files this action to stand up for herself and others, to put a stop to the assault upon her personal life and constitutional rights, to end her harassment and the threats of violence and personal attacks she is enduring, and to confirm that such misconduct will not be tolerated or allowed to continue and

---

[1]  Plaintiff's counsel reviewed the Local Rules and searched for guidance on the use of profanity in pleadings, and found no results.  However, because Plaintiff's claims are based upon the hostile, aggressive, and abusive nature of the language quoted herein, its severity, and its impacts, Plaintiff believes it is important for that language to be uncensored in this filing.

possibly escalate, regardless of the viewpoints of those who engage in such conduct, or of their victims.

## PARTIES, JURISDICTION & VENUE

9.      This is an action for injunctive relief and damages in excess of $1 million, excluding interest, costs, and attorneys' fees.

10.     Plaintiff, Hammer, is a resident of Leon County, Florida.[2]

11.     Defendant, Sorensen, is a citizen and resident of Camarillo, California.  Sorensen is a 67-year-old Caucasian male whose weight, height, and other physical characteristics are unknown.

12.     Defendant, Risica, is a citizen and resident of New London, Connecticut.  Risica is a 38-year-old male whose weight, height, and other physical characteristics are unknown.

13.     Defendant, Weiss, is an individual whose identity and state of residence are unknown at this time, but is believed to be a citizen and resident of a state other than Florida.

14.     Defendant, Sullivan, is an individual whose identity and state of residence are unknown at this time, but is believed to be a citizen and resident of a state other than Florida.

---

[2]   Pursuant to Section 784.0485, Florida Statutes, for safety reasons Hammer requests and requires that the location of her current address be confidential.

15.     Upon information and belief, other individuals who directed e-mails and communications at Hammer are or may be part of a coordinated effort to harass, intimidate, coerce, and threaten Hammer.  Consequently, they and any organizations or entities that are organizing, directing, aiding, abetting, coordinating, and/or participating in their actions may be added as defendants at a later time.[3]

16.     Pursuant to 28 U.S.C. § 1391, venue is proper in this District because a substantial part of the events giving rise to the claims occurred in this District.

17.     This Court has personal jurisdiction over the Defendants because they each engaged in substantial and not isolated activity, including the tortious acts outlined herein, within the State of Florida and/or directed at and intended to cause harm to Hammer in the State of Florida; and/or because they maintain substantial and not isolated contacts with the State of Florida.

18.     This Court has subject matter jurisdiction under 28 U.S.C. § 1332 because the amount in controversy exceeds $75,000, exclusive of interest and costs, and this action is between citizens of different states.

---

[3] It appears based on the form, content and methods of the communications directed to Hammer that she is the target of a coordinated attack intended to humiliate, harass, and cause substantial emotional distress.  For example, Hammer received the same postcards from various individuals throughout the United States, often mailed from the same location.  In several instances, the content of the communications Hammer received used the same specific terms and phrases, thus demonstrating direction and cooperation.

## STATEMENT OF THE FACTS

19.     Hammer has been a prominent advocate for the Second Amendment for decades.   In 1995, she became the first woman president of the NRA. Throughout her career, she has been a leader in championing gun safety training at the state and national levels.

20.     Hammer also is a staunch and vocal advocate for quality educational opportunities for children with dyslexia and learning disabilities.

21.     Hammer currently lives and works as a lobbyist in Tallahassee, Florida.

22.     Following the tragic shooting that occurred at Marjory Stoneman Douglas High School and continuing after the national debate over gun control took center stage on television, online, and through social media, Hammer became one of the focal points of a campaign of hate and vitriol that includes threats against her and her grandchildren, harassing phone calls, and numerous e-mails and other written communications that serve no purpose other than to cause substantial emotional distress and to try to humiliate and intimidate Hammer.

23.     Hammer has been confronted and verbally attacked in grocery stores, being told, "You're that evil fucking NRA bitch.  I hope somebody blows your fucking head off and your family too."

24.    Hammer's daily life has drastically altered because of the harassment she is enduring.  Whenever she is in public she worries that the people who have been harassing her will confront her and that a confrontation could turn violent. She has a very close relationship with her family, but now frequently avoids going out to dinner with them because she runs the risk of being recognized and attacked; potentially exposing her family and other members of the public to physical violence directed toward her.  She adjusted her schedule and the places she eats with her family so that they are not predictable.  Her entire family group does not go anywhere together any more.

25.    Hammer has even avoided public hearings and appearances—thus restraining her own constitutional rights and interfering with her performance of her professional duties—over fears that the harassment and threats against her will escalate and expose bystanders to physical harm.

26.    The attacks being launched against Hammer have occurred in an increasingly aggressive social climate in which the Internet has allowed free speech to be hijacked, perverted, and abused to inflict harm, fear, and emotional pain on others.

27.    E-mail and social media are more frequently being exploited as implements of harassment and bullying, rather than for the free expression of ideas and commentary on matters of public importance.

28.    Tragically, online and electronic harassment masquerading as free speech often precede violent attacks upon the harassers' victims.  When that happens, hindsight reveals warning signs that were ignored and a legal process that often fails to prevent the preventable.

29.    Hammer is not willing to ignore the precursors to violence she is enduring while warning signs in the language used by her harassers point to their conduct continuing and escalating.

30.    Hammer's daily life is being disrupted by electronic harassment and cyber-stalking at the hands of people professing to be her "***enemy for life***," while a growing number of groups such as "End the NRA" have formed for the "singular focus… to make the lives of the NRA's leadership, board members and high-profile supporters a ***living hell***."  (**Exhibit 1**) (emphasis added).

31.    Even politicians are fanning the flames by sending mixed messages that can be easily interpreted as incitement to harass and harm political opponents.

32.    As one former U.S. Secret Agent noted, such statements "are dangerous, as they can be misinterpreted as a call to physical action or harm against an individual and people who associate with them." (*See* https://www.cnn.com/2018/06/25/opinions/ex-secret-service-agent-says-waters-comments-are-dangerous-wackrow).

33.    Within this backdrop, Hammer has experienced vile personal abuse, threats and harassment, including attacks emanating from the hands of the Defendants, that serve no purpose other than to try to make her life a "living hell."

34.    A number of individuals (some protected by the anonymity of e-mail) launched vicious personal attacks upon Hammer, which go far beyond mere insults and indignities:

> *"Fuck you, Cunt. That is all."*
>
> - bizarr███████@█████.com (**Exhibit 2**)
>
> *****
>
> *"you are a VILE CUNT... enough said"*
>
> - smith██████@█████.com (**Exhibit 3**)
>
> *****
>
> *"I'm horrified at your behavior.  Nothing more than a truly ugly from the inside out redneck.  Rot in hell you soulless cunt."*
>
> - suzanne.████████@█████.com (**Exhibit 4**)
>
> *****
>
> *"Dead Kids... Eat shit ghoul."*
>
> - ebu████@█████.com (**Exhibit 5**)
>
> *****
>
> *"You are a wretched fucking bitch.  You are complicit in the deaths of 17 children.  I hope you rot in hell."*
>
> - █████vil@███████.com (**Exhibit 6**)

*****

*"Die in hell bitch."*

- jim████████@████.com (**Exhibit 7**)

*****

*"How do you sleep at night advocating the slaughter of more children?... You propagate murder and death for profit.  Stick this email up your bought and paid for corporate ass you worthless two bit corporate whore."*

- tim█████@█████.com (**Exhibit 8**)

*****

*"You are a disgusting piece of shit.  I know you'll never be ashamed of yourself, feces isn't capable of that, but you should be…"*

- nicky████████@█████.com (**Exhibit 9**)

35.    A number of other individuals emailed Hammer charging her with direct responsibility for murdering innocent children:

*"Have enough of our children's blood on your hand's yet????"*

- angela_████████@███.com (**Exhibit 10**)

*****

*"Murdered children… You make it happen."*

- █████ox@██████.com (**Exhibit 11**)

*****

*"How can you help the NRA enact such draconian legislation when children are dying.  You are a blind and uninformed woman whose work is killing people."*

- smc.com (**Exhibit 12**)

*****

*"You are a murderer."*

- steve█@█.com (**Exhibit 13**)

*****

*"You have cost kids their lives – you have blood on your hands"*

- marc.com (**Exhibit 14**)

*****

*"Shame on you for the blood on your hands"*

- doug.█@█.com (**Exhibit 15**)

*****

*"You have killed our family and friends.  You are responsible for the deaths in Florida and for the deaths all across the U.S."*

- yay█@█.com (**Exhibit 16**)

*****

*"blood on your hands… You are personally responsible for the deaths of dozens of children…"*

- mark█@█.com (**Exhibit 17**)

*****

*"you are a leader of a terrorist organization, no different from ISIS or any other hostile organization, you area*

*(sic) serial killer that for the time being is allowed to walk among the innocent, I am waiting for the day your blood soaked hands are in handcuffs."*

- stephen███@███.com (**Exhibit 18**)

\*\*\*\*\*

*"More… dead kids to add to your resume, Marion.  I'm sure you're proud because, you know, you're awful.  There's a special place in Hell for you"*

- justin.███@███.com (**Exhibit 19**)

\*\*\*\*\*

*"YOU and YOU ALONE are responsible for the DEATH of those CHILDREN… buy another gun and shoot someone who doesn't agree with you.  That's what you do isn't it??  You shoot people by destroying them, destroying their careers.  It's the same as that Nikolas kid… you shoot people, except you get away with it!!!!"*

- sb███@███.net (**Exhibit 20**)

\*\*\*\*\*

*"You better be aware that many MANY now want you on a platter…"*

- brantl███@███.com (**Exhibit 21**)

\*\*\*\*\*

*"Thank you for murdering 17 more children this week."*

- siegel███@███.com (**Exhibit 22**)

\*\*\*\*\*

*"Because of you people have died.  We hold you culpable for all the innocent lives murdered and for facilitating gun violence you should never rest easy or in peace."*

- lina████@████.com (**Exhibit 23**)

*****

*"... you are horrifying ugly murderous... you are culpable for the deaths of all the children [who] been killed in Florida... you are as ugly inside as you are on the outside... and are ugly vile stupid ignorant and murderous...*

*Should have been you as one of the victims."*

- elzan████@████.com (**Exhibit 24**)

*****

*"Gun lobbyists are POS... You are on my shit list, you are on GOD's shit list.  You all have blood on your hands."*

- auto████████@████.com (**Exhibit 25**)

*****

*"Blood on your hands... Shame, horror, blood, money, profit, guns and dead children – that's your legacy.  Go find another country to live in, maybe Syria.  They have lots of guns and dead people there."*

- korey.████████@████.com (**Exhibit 26**)

*****

> *"You should be forced to clean up the blood and guts mess inside the Parkland High School and tell the families of those slain how important your gun lobby job is!  You are a piece of shit!  May you and all the NRA whores burn in hell!"*

- dwight.███@██.com (**Exhibit 27**)

36.     Even those professing to be dedicated to preaching anti-hate and anti-violence resorted to threatening Hammer's family.  During a public hearing in Tallahassee on February 27, 2018, Rev. Joe Parramore leaned over to Hammer and stated:

> *"The next check you write will be to pay for the funerals of your grandchildren."*

37.     Hammer has received emails making similar threats referencing her grandchildren.  (**Exhibit 28**).

38.     Defendant, Sorensen, sought out Hammer's e-mail address and sent her two unsolicited emails that contain graphic photos of gunshot victims, including an unidentified person in a hospital bed with gaping leg wounds and a photo of President John F. Kennedy's head after he was assassinated.  (**Exhibit 29**).

39.     Defendants, Risica, Weiss, and Sullivan, each sought out Hammer's e-mail address and sent her unsolicited e-mails containing indirect and/or direct threats accompanied by humiliating and abusive personal attacks:

*"Dear Twat. You are a vile cunt. I hope you get to experience a (sic) ammo dido (sic). I can't wait till the day I flip on the news to see you mourning a gunshot victim. You're disgusting and exactly what's wrong with people today. I seriously hope karma comes around for you soon. You and that other ammosexual the fairy Wayne LaPierre, what a masculine name to match the fairy he is. I hope to see he died of a gunshot wound that took hours of pain before he succumbed…*

*Fuck you. You worthless cunt. You're a whore, not a freedom fighter… I hope you don't (sic) a moment of peace for the rest of your pitiful lives…"*

- Chris Risica (**Exhibit 30**)

*****

*"The consequences that you will… be subjected to when you are killed by those weapons you have hawked for all these years will send you to burn in hell you fucking heartless, greedy bitch. I pray everyday that one of these 'good' people puts 100 bullets between your eyes so we can celebrate."*

- Howard Weiss (**Exhibit 31**)

*****

*"You should rot in hell you disgusting bitch!!!! HOW MANY CHILDREN HAVE TO DIE SO YOU CAN GET YOUR ROCKS OFF WITH YOUR FUCKING GUNS!!!*

*Is it because your (sic) so fucking ugly and you never gotten laid in your life?*

*Can't you go be a nun like old hags like you used to do in order to get your jollies off of being sadistic to children? It's perverse that you would rather watch them get killed… FUCK YOU. I pray someday I run*

*into you so I can scream my head off at your sick face!!!*

*Your enemy for life.*"

- Patrick Sullivan (**Exhibit 32**)

40.     While Hammer is being targeted with these vicious attacks, she is keenly aware that she is not the only victim of escalating aggression toward the NRA.

41.     For example, in late 2017, following the tragic shooting in Las Vegas, an NRA spokeswoman was forced to move after receiving death threats, threats of being raped and threats directed toward her children. (*See* http://thehill.com/homenews/media/355717/nra-spokeswoman-says-shes-moving-due-to-gun-control-death-threats).

42.     In February 2018, a billboard in Louisville, Kentucky was vandalized with the message "KILL THE NRA." (*See* https://www.cnn.com/2018/02/20/us/louisville-kentucky-nra-billboard).

43.     In May 2018, a professor from Nebraska was convicted of spraying fake blood on the home of an NRA lobbyist in Alexandria, Virginia, while his two young children were at home. (*See* https://www.washingtonpost.com/local/public-safety/professor-convicted-of-vandalizing-nra-lobbyists-home-with-fake-blood/2018/05/21)

44.    Hammer's harassment is occurring in an environment in which organized groups are initiating public confrontations with political opponents; such as when Florida Attorney General Pam Bondi had to be escorted from a movie theatre by armed security after being confronted and harassed by protestors, whom she described as "trying to create a fight"; and when Sen. Dana Young was confronted and blocked by protestors outside a restaurant, who began yelling about the Parkland shooting, saying Sen. Young had "blood on her hands" and calling her a "killer" and "murderer."

45.    In a recent lawsuit filed to challenge the constitutionality of a Florida law imposing age restrictions on gun purchases, two young adults filed a motion to proceed as anonymous plaintiffs based on fears of harassment, intimidation and potential violence.  (*See NRA, et. al. v. Pam Bondi, et. al.*, Case No. 4:18-cv-00137-MW-CAS).

46.    That request, which the State of Florida opposed, was based in part on several of the aforementioned e-mails Hammer received.

47.    In his Order denying the plaintiffs' motion to proceed under pseudonyms, the Honorable Mark E. Walker, U.S. District Judge, characterized several of the above-referenced e-mails Hammer received as "hateful and abhorrent," "threats," and "harassment."  (**Exhibit 33**).

48.    The modern reality is that failing to take available action against harassers in the face of such threats leads to tragic consequences.  Violent attacks against harassment victims are often preceded by online and electronic threats that are ignored.

49.    Hammer is the victim of cyberstalking, harassment, intentional infliction of emotional distress, and intrusion upon seclusion under Florida statutory and common law. The Defendants' e-mails evidence a pattern of conduct composed of a series of acts evidencing a continuity of purpose to harass and cyberstalk or they assert threats against Hammer; including e-mails that communicated words and language or images specifically directed at Hammer which caused substantial emotional distress and served no legitimate purpose.

50.    All of the aforementioned e-mails and other communications, including the Defendants' e-mails, were received, unsolicited, and unwelcomed by Hammer in Florida.

51.    In addition to violating Section 784.048, Florida Statutes, the above-referenced e-mails violate several Federal laws, including:

      (a)    <u>18 U.S.C. § 875</u>:  which prohibits the transmission of any threat to injure the person of another using the Internet;

      (b)    <u>47 U.S.C. § 223</u>:  which prohibits the use of a telecommunications device to abuse, threaten or harass a specific person; and/or

(c) <u>18 U.S.C. § 2261A</u>:  which prohibits the use of e-mail to harass, intimidate and threaten a person or her immediate family member, or causes, attempts to cause or reasonably expects to cause substantial emotional distress to a person or her immediate family member.

## <u>COUNT I</u>
### (Injunctive Relief—Cyberstalking—Sorensen)

52. Hammer re-alleges paragraphs 1 through 51 as if fully set forth herein.

53. Hammer is the victim of cyberstalking by Defendant, Sorensen, because Sorensen engaged in a course of conduct to communicate or to cause to be communicated images by and through the use of electronic mail directed at Hammer, causing substantial emotional distress to Hammer and serving no legitimate purpose; as more fully set forth in paragraph 38, above, and in Exhibit 29 hereto.

54. Cyberstalking is a form of wrongful conduct, not speech, which is prohibited by § 784.048, Florida Statutes, as well as 47 U.S.C. § 223 and/or 18 U.S.C. § 2261A.

55. Cyberstalking is a form of harassment that can be enjoined under § 784.0485, Florida Statutes, as well as under common law, which provides for the entry of injunctions to prevent harassment.  *Gilbreath v. State*, 650 So.2d 10, 12 (Fla. 1995); *Kimball v. Fla. Dept. of Health and Rehab. Srvs.*, 682 So.2d 637, 639

(Fla. 2d DCA 1996); *Animal Rights Found. of Fla., Inc. v. Siegel*, 867 So.2d 451, 464 (Fla. 5th DCA 2004).

56.     Justice, reason, and common sense justify the entry of an injunction for the cyberstalking Hammer has experienced in this case.

57.     Hammer has a clear legal right to the entry of an injunction.

58.     Hammer will suffer irreparable harm if an injunction is not issued, for which there is no adequate remedy at law.

59.     Hammer has a substantial likelihood of success on the merits of her claim.

60.     The threatened injury to Hammer as a result of Sorensen's continued misconduct outweighs any possible harm that would result from the entry of an injunction.

61.     The considerations of the public interest support the entry of an injunction.

62.     There is no other cause of action currently pending between Hammer and Sorensen.

63.     Hammer has not made any previous attempt to obtain an injunction for protection against Sorensen in this or any other court.

WHEREFORE, Hammer seeks a temporary and permanent injunction restraining Sorensen from committing any acts of cyberstalking against her and

providing any terms the Court deems necessary for the protection of Hammer, including any injunctions or directives to law enforcement agencies.

## COUNT II
### (Injunctive Relief—Harassment—Sorensen)

64.    Hammer re-alleges paragraphs 1 through 51 as if fully set forth herein.

65.    Hammer is the victim of harassment by Defendant, Sorensen, because Sorensen engaged in a course of conduct directed at Hammer, causing substantial emotional distress to Hammer and serving no legitimate purpose; as more fully set forth in paragraph 38, above, and in Exhibit 29 hereto.

66.    Sorensen's conduct amounts to harassment under Section 748.048, Florida Statutes, and under Florida common law.

67.    Harassment is not speech:  it is wrongful conduct that may take the form of speech.  Consequently, it can be enjoined without running afoul of the First Amendment.  *Gilbreath*, 650 So.2d at 12; *Kimball*, 682 So.2d at 639; *Siegel*, 867 So.2d at 464.

68.    Justice, reason, and common sense compel a remedy for Sorensen's misconduct.

69.    Hammer has a clear legal right to the entry of an injunction.

70.    Hammer will suffer irreparable harm if an injunction is not issued, for which there is no adequate remedy at law.

71.    Hammer has a substantial likelihood of success on the merits of her claim.

72.    The threatened injury to Hammer as a result of Sorensen's continued misconduct outweighs any possible harm that would result from the entry of an injunction.

73.    The considerations of the public interest support the entry of an injunction.

74.    There is no other cause of action currently pending between Hammer and Sorensen.

75.    Hammer has not made any previous attempt to obtain an injunction for protection against Sorensen in this or any other court.

WHEREFORE, Hammer seeks an injunction temporarily and permanently restraining Sorensen from committing any acts of harassment against her and providing any terms the Court deems necessary for the protection of Hammer, including any injunctions or directives to law enforcement agencies.

## COUNT III
### (Injunctive Relief—Intentional Infliction of Emotional Distress)

76.    Hammer re-alleges paragraphs 1 through 51 as if fully set forth herein.

77.    Defendant, Sorensen, intentionally or recklessly inflicted emotional distress upon Hammer, when he knew or should have known that emotional

distress would result, by sending the e-mails specifically set forth in paragraph 38, above, and in Exhibit 29 hereto.

78.    Defendant, Risica, intentionally or recklessly inflicted emotional distress upon Hammer, when he knew or should have known that emotional distress would result, by sending the e-mail specifically set forth in paragraph 39, above, and in Exhibit 30 hereto.

79.    Defendant, Weiss, intentionally or recklessly inflicted emotional distress upon Hammer, when he knew or should have known that emotional distress would result, by sending the e-mail specifically set forth in paragraph 39, above, and in Exhibit 31 hereto.

80.    Defendant, Sullivan, intentionally or recklessly inflicted emotional distress upon Hammer, when he knew or should have known that emotional distress would result, by sending the e-mail specifically set forth in paragraph 39, above, and in Exhibit 32 hereto.

81.    The Defendants' conduct was outrageous, as to go beyond all bounds of decency and to be regarded as odious and utterly intolerable in a civilized community.

82.    The revilement the Defendants inflicted upon Hammer is explicit and egregious.

83.     The Defendants' conduct has caused and will continue to cause severe emotional distress, shame, humiliation, and embarrassment to Hammer in the future if such conduct is allowed to continue.

84.     Hammer has a clear legal right to the entry of an injunction.

85.     Hammer will suffer irreparable harm if an injunction is not issued, for which there is no adequate remedy at law.

86.     Hammer has a substantial likelihood of success on the merits of her claim.

87.     The threatened injury to Hammer as a result of Defendants' continued misconduct outweighs any possible harm that would result from the entry of an injunction.

88.     The considerations of the public interest support the entry of an injunction.

WHEREFORE, Hammer seeks a temporary and permanent injunction restraining each of the Defendants from inflicting any emotional distress upon her through emails or other written or verbal communications containing the words and language set forth in Exhibits 29-32, and providing any terms the Court deems necessary for the protection of Hammer.

## COUNT IV
### (Damages—Intentional Infliction of Emotional Distress)

89.     Hammer re-alleges paragraphs 1 through 51 as if fully set forth herein.

90.     Defendant, Sorensen, intentionally or recklessly inflicted emotional distress upon Hammer, when he knew or should have known that emotional distress would result, by sending the e-mails specifically set forth in paragraph 38, above, and in Exhibit 29 hereto.

91.     Defendant, Risica, intentionally or recklessly inflicted emotional distress upon Hammer, when he knew or should have known that emotional distress would result, by sending the e-mail specifically set forth in paragraph 39, above, and in Exhibit 30 hereto.

92.     Defendant, Weiss, intentionally or recklessly inflicted emotional distress upon Hammer, when he knew or should have known that emotional distress would result, by sending the e-mail specifically set forth in paragraph 39, above, and in Exhibit 31 hereto.

93.     Defendant, Sullivan, intentionally or recklessly inflicted emotional distress upon Hammer, when he knew or should have known that emotional distress would result, by sending the e-mail specifically set forth in paragraph 39, above, and in Exhibit 32 hereto.

94.     The Defendants' conduct was outrageous, as to go beyond all bounds of decency and to be regarded as odious and utterly intolerable in a civilized community.

95.     The revilement the Defendants inflicted upon Hammer is explicit and egregious.

96.     The Defendants' conduct has caused and will continue to cause severe emotional distress, shame, embarrassment, and humiliation to Hammer.

97.     As a direct and proximate result, Hammer is entitled to recover damages from each of the Defendants, in appropriate amounts to be determined by the trier of fact.

WHEREFORE, Hammer demands judgment against each of the Defendants for damages, interest and costs, as well as such other and further relief as the Court deems just and appropriate.

## COUNT V
### (Injunctive Relief—Intrusion Upon Seclusion)

98.     Hammer re-alleges paragraphs 1 through 51 as if fully set forth herein.

99.     Defendant, Sorensen, intentionally or recklessly intruded upon Hammer's seclusion and private activities through electronic means, by sending the e-mails specifically set forth in paragraph 38, above, and in Exhibit 29 hereto.

100.    Defendant, Risica, intentionally or recklessly intruded upon Hammer's seclusion and private activities through electronic means, by sending the e-mail specifically set forth in paragraph 39, above, and in Exhibit 30 hereto.

101.   Defendant, Weiss, intentionally or recklessly intruded upon Hammer's seclusion and private activities through electronic means, by sending the e-mail specifically set forth in paragraph 39, above, and in Exhibit 31 hereto.

102.   Defendant, Sullivan, intentionally or recklessly intruded upon Hammer's seclusion and private activities through electronic means, by sending the e-mail specifically set forth in paragraph 39, above, and in Exhibit 32 hereto.

103.   Intrusion upon seclusion extends not only to physical intrusions but to electronic intrusions as well. *Zirena v. Capital One Bank (USA) NA*, No. 11-24158-CIV, 2012 WL 843489 at *2 (S.D. Fla. Feb. 2, 2012) (defining the intrusion tort as electronically intruding into one's private quarters and holding that harassing phone calls were actionable).

104.   The actions by each of the Defendants are offensive and objectionable, and would outrage or cause mental suffering, shame, humiliation, or hurt feelings to a person of ordinary sensibilities.

105.   The Defendants' conduct was outrageous, as to go beyond all bounds of decency and to be regarded as odious and utterly intolerable in a civilized community.

106.   The Defendants' conduct has caused and will continue to cause emotional distress, humiliation, shame, and embarrassment to Hammer in the future if such conduct is allowed to continue.

107.   Hammer has a clear legal right to the entry of an injunction.

108.   Hammer will suffer irreparable harm if an injunction is not issued, for which there is no adequate remedy at law.

109.   Hammer has a substantial likelihood of success on the merits of her claim.

110.   The threatened injury to Hammer as a result of Defendants' continued misconduct outweighs any possible harm that would result from the entry of an injunction.

111.   The considerations of the public interest support the entry of an injunction.

WHEREFORE, Hammer seeks a temporary and permanent injunction restraining each of the Defendants from intruding upon her seclusion through emails or other electronic communications containing the words and language set forth in Exhibits 29-32, and providing any terms the Court deems necessary for the protection of Hammer.

## <u>COUNT VI</u>
**(Damages—Intrusion Upon Seclusion)**

112.   Hammer re-alleges paragraphs 1 through 51 as if fully set forth herein.

113.   Defendant, Sorensen, intentionally or recklessly intruded upon Hammer's seclusion and private activities through electronic means, by sending the e-mails specifically set forth in paragraph 38, above, and in Exhibit 29 hereto.

114.    Defendant, Risica, intentionally or recklessly intruded upon Hammer's seclusion and private activities through electronic means, by sending the e-mail specifically set forth in paragraph 39, above, and in Exhibit 30 hereto.

115.    Defendant, Weiss, intentionally or recklessly intruded upon Hammer's seclusion and private activities through electronic means, by sending the e-mail specifically set forth in paragraph 39, above, and in Exhibit 31 hereto.

116.    Defendant, Sullivan, intentionally or recklessly intruded upon Hammer's seclusion and private activities through electronic means, by sending the e-mail specifically set forth in paragraph 39, above, and in Exhibit 32 hereto.

117.    Intrusion upon seclusion extends not only to physical intrusions but to electronic intrusions as well. *Zirena*, 2012 WL 843489 at *2 (defining the intrusion tort as electronically intruding into one's private quarters and holding that harassing phone calls were actionable).

118.    The actions by each of the Defendants are offensive and objectionable, and would outrage or cause mental suffering, shame, humiliation, or hurt feelings to a person of ordinary sensibilities.

119.    The Defendants' conduct was outrageous, as to go beyond all bounds of decency and to be regarded as odious and utterly intolerable in a civilized community.

120.   The Defendants' conduct caused emotional distress, humiliation, shame, and embarrassment to Hammer.

121.   As a direct and proximate result, Hammer is entitled to recover damages from each of the Defendants, in appropriate amounts to be determined by the trier of fact.

WHEREFORE, Hammer demands judgment against each of the Defendants for damages, interest and costs, as well as such other and further relief as the Court deems just and appropriate.

## DEMAND FOR JURY TRIAL

Hammer demands a trial by jury on all issues so triable.

Respectfully submitted, this 13th day of July, 2018.

*/s/ Shane B. Vogt*
Kenneth G. Turkel
Florida Bar No. 867233
E-mail:  kturkel@bajocuva.com
Shane B. Vogt
Florida Bar No. 257620
E-mail:  svogt@bajocuva.com
BAJO | CUVA | COHEN | TURKEL
100 North Tampa Street, Suite 1900
Tampa, Florida 33602
Tel.: 813-443-2199
Fax: 813-443-2193
*Attorneys for Plaintiff*

## <u>VERIFICATION</u>

I HAVE READ EVERY STATEMENT MADE IN THIS COMPLAINT AND EACH STATEMENT IS TRUE AND CORRECT.  I UNDERSTAND THAT THE STATEMENTS MADE IN THIS COMPLAINT ARE BEING MADE UNDER PENALTY OF PERJURY.

July 13, 2018
DATE

MARION HAMMER