IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF FLORIDA
TALLAHASSEE DIVISION

MARION P. HAMMER,

    Plaintiff,

v.                                         CASE NO.: 4:18cv329-RH/CAS

LAWRENCE T. SORENSEN,

    Defendant.

_____/

## **DEFENDANT SORENSEN'S MOTION TO DISMISS**

COMES NOW the Defendant, Lawrence Sorensen, by and through his undersigned counsel, and moves to dismiss the Complaint for lack of subject matter jurisdiction and a failure to state a cause of action under Fed. R. Civ. P. 12(b)(1) and (b)(6). Pursuant to N.D. Fla. Loc. R. 7.1, Mr. Sorensen has conferred in good faith with counsel for the Plaintiff, who does not agree to the granting of this motion.

## **MEMORANDUM OF LAW**

### **I. First Amendment - All Counts**

The First Amendment of the United States Constitution requires the dismissal of all of the Plaintiff's claims. To grant the injunctive relief requested by the Plaintiff would constitute a "prior restraint" on speech. Such prior restraints are unconstitutional. *David v. Textor*, 189 So. 3d 871, 876 (Fla. 4th DCA 2016)

(striking cyberstalking injunction under Section 784.0485, Florida Statutes). Whether couched as stalking, harassment, intentional infliction of emotional distress or intrusion upon seclusion, the First Amendment protects the speech engaged in by Mr. Sorensen and prohibits this Court from enjoining such speech.

In addition to barring claims for injunctive relief, the First Amendment in this case also bars any claim for damages. In *Hustler Magazine, Inc. v. Falwell*, 108 S.Ct. 876 (1988), the Supreme Court of the United States addressed conduct by a magazine publisher that was far more egregious than Mr. Sorensen's protest speech. In *Falwell*, the Court was reviewing a claim made by a minister who alleged damages from an "intentional infliction of emotional distress" and an invasion of privacy, when the magazine printed a story about the minister having been engaged in a drunken, incestuous rendezvous with his mother in an outhouse. Notwithstanding the scurrilous allegations, Justice Rehnquist delivered the opinion of the Court, holding the First Amendment shielded the Defendant from any liability for intentional infliction of emotional distress.

Like the plaintiff in *Falwell*, Ms. Hammer is also a public figure. She concedes she is a public figure, alleging she is a "prominent advocate for the Second Amendment" and a "leader in championing gun safety training at the state and national levels." Complaint, par. 19. Thus, Ms. Hammer agrees that she is a public figure on issues relating to the right to bear firearms.

Because her Complaint seeks to curtail Mr. Sorensen's speech, Ms. Hammer's claim must be strictly construed against her. "At the heart of the First Amendment is the recognition of the fundamental importance of the free flow of ideas and opinions on matters of public interest and concern." *Falwell*, at 879. The First Amendment is designed to encourage debate and stimulate ideas and solutions. "The sort of robust political debate encouraged by the First Amendment is bound to produce speech that is critical of those who hold public office or those public figures who are 'intimately involved in the resolution of important public questions or, by reason of their fame, shape events in areas of concern to society at large.'" *Falwell*, at 879 (citations omitted). Therefore, the *Falwell* Court held: "We conclude that public figures and public officials may not recover for the tort of intentional infliction of emotional distress by reason of publications such as the one here at issue without showing in addition that the publication contains a false statement of fact which was made with 'actual malice,'" i.e., with knowledge that the statement was false or with reckless disregard as to whether or not it was true. *Falwell*, at 882.

In the case at bar, there is no defamation claim in the Complaint, because there is no allegation that any of Mr. Sorensen's statements were untrue. Instead, Ms. Hammer complains that she is a tort victim based on Mr. Sorensen's email asking her to consider the damage that can be done by firearms, as depicted in two

photographs. The Complaint does not contend that Mr. Sorensen made a threat or used offensive language. The two photographs truthfully depict injuries from gunshots.

This protest by Mr. Sorensen can be likened to anti-war protests. From the first time Mathew Brady published the graphic images of Civil War battles to the modern day broadcast of war and other conflicts, people have used photographs and videos to inform the public and protest violence. Certainly, it was not a tort for the AP photographer to publish his photograph of the Vietnamese girl running naked down the road, burned from napalm. Nor is it a tort to forward a gruesome picture of a lynching in order to remind others of the need to remain vigilant against racism.

In this form of speech, there is nothing false. Instead, the photographs are intended to inject real information into a national debate. In this case, there is an ongoing public debate pertaining to the wisdom of regulating such high powered weapons. Ms. Hammer has been a leading advocate on these issues for her client, the NRA. Mr. Sorensen's message to her was classic protest speech to a public figure with huge influence in the national debate over gun rights. Therefore, the First Amendment shields him from liability for the tort of intentional infliction of emotional distress.

The Supreme Court also has applied the First Amendment to bar the additional tort claims alleged in this case. Counts V and VI of Ms. Hammer's Complaint allege "intrusion upon seclusion." This theory has been addressed directly by the United States Supreme Court. In *Snyder v. Phelps*, 562 U.S. 443 (2011), Justice Roberts authored the Court's opinion, writing that the "intrusion upon seclusion" theory was subject to the identical First Amendment defense addressed in *Falwell*. That is, in matters of public concern, there can be no tort to bar speech. In *Snyder,* the Supreme Court upheld the rights of Westboro Baptist Church members to picket the funeral of a Marine killed in combat. Notwithstanding that civilized people would consider such acts to be highly offensive, the Supreme Court held that such speech on public issues was protected under the First Amendment. The Court held: "Because we find that the First Amendment **bars Snyder from recovery for intentional infliction of emotional distress or intrusion upon seclusion**—the alleged unlawful activity Westboro conspired to accomplish—we must likewise hold that Snyder cannot recover for civil conspiracy based on those torts." *Id.* at 460 (emphasis added).

In the instant case, Mr. Sorensen's speech was not only protected by the First Amendment, but this type of protest serves an important function in this country. As the Supreme Court has stated: "Our speech concerning public affairs is more than self-expression; **it is the essence of self-government.**" *Garrison v. Louisiana*,

5

379 U.S. 64 (1964). In other words, it is a civic duty to protest in our form of self-government. In accordance with these precedents, the entire Complaint should be dismissed.

## II. Additional Defenses as to Counts I and II

### A. Lack of Subject Matter Jurisdiction.

Counts I and II of the Complaint allege liability based on Sections 784.048 and 784.0485, Florida Statutes. Because this Court lacks subject matter jurisdiction over such claims, however, Counts I and II should be dismissed. The statutes in question directly provide that an injunction for cyberstalking must be made in "circuit court" and must be based on a sworn petition. *Harvick v. Oak Hammock Preserve Community Homeowners Assoc.*, 2015 WL 667984 (M.D. Fla. 2015). Because this court is not a state circuit court and no petition has been filed in conformance with Section 784.0485, this Court lacks jurisdiction to hear a claim for a "cyberstalking" injunction under these statutes.

### B. Counts I and II fail to state a claim.

Counts I and II also fail to allege sufficient facts to state a cause of action. A motion to dismiss made pursuant to Rule 12(b)(6) tests the legal sufficiency of a complaint. In order to survive a motion to dismiss, a complaint must "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007). The plaintiff must allege sufficient facts to allow the court to draw a

reasonable inference that the defendant is liable. Mere legal conclusions or recitation of the elements are not enough. *Twombly*, 550 U.S. at 555.

Thus, even if this Court had jurisdiction, the Plaintiff has failed in Counts I and II to allege the basic legal elements for relief under the Florida Statutes. Plaintiff has failed to allege that Mr. Sorensen engaged in a "pattern of conduct." Plaintiff has failed to allege a "series of acts" over a "period of time." Plaintiff has failed to allege a "continuity of purpose." Here, the totality of the factual allegations is that Mr. Sorensen sent two email within one half hour of each other in March of 2018. This is legally insufficient to state a cause of action under this Florida statute.

In addition, the statute requires that the communication must serve "no legitimate purpose." The standard for whether a "legitimate purpose" is served is the reasonable person standard. Here, no party disputes that Mr. Sorensen's intent was to express an opinion regarding the national debate on gun rights. There is no allegation to the contrary. Mr. Sorensen's conduct served a "legitimate purpose" by an objective viewpoint.

An additional flaw in these counts is that the statute expressly disclaims any application to constitutionally protected activity such as picketing or other organized protests. Thus, both the statutory language itself and the First

Amendment dictate that the Florida statute does not apply to protest speech, such as the communication attributed to Mr. Sorensen.

Absent a statutory action based on either Section 748.048 or an anti-discrimination statute in the employment context, there is no general cause of action for "harassment" in Florida. *Kamhi v. Waterview Towers Condominium Assoc.*, 793 So. 2d 1033, 1037 (Fla. 4th DCA 2001); *Cummings v. Dawson*, 444 So. 2d 565 (Fla. 1st DCA 1984). Therefore, Count II also fails to state a cause of action on this ground. Count II also fails to satisfy Florida's "impact rule" which requires a physical injury or contact before a tort can trigger liability. In this case, Plaintiff has not alleged a physical injury under Florida's "impact rule," which is fatal on this count. Thus, to the extent Ms. Hammer's alleges common law harassment, this is not a cognizable claim in Florida. *Scelta v. Delicatessen Support Services, Inc.*, 57 F.Supp.2d 1327, 1338 (M.D. Fla. 1999). Therefore, these counts should be dismissed for failure to state a claim.

### III. Additional Defenses to Count III and IV (Intentional Infliction of Emotional Distress)

Whether conduct is outrageous enough to support a claim of intentional infliction of emotional distress is a question of law, not a question of fact. *Liberty Mutual Ins. Co. v. Steadman*, 968 So. 2d 592 (Fla. 2nd DCA 2007). In *Liberty Mutual*, at 594-595, the court set a very high standard for an action for intentional infliction of emotional distress. Such conduct must be "so outrageous in character,

and so extreme in degree, as to go beyond all possible bounds of decency." It must be "atrocious, and utterly intolerable in a civilized community."

The court in *Kim v. Chang*, 2018 WL 3130953 (Fla. 2d DCA 2018) summarized the elements of intentional infliction of emotional distress as (1) intentional or reckless conduct that is; (2) "outrageous" in that it is "beyond all bounds of decency" and "utterly intolerable in a civilized community"; (3) that causes the victim emotional distress; and (4) that is "severe." *Kim*, at *5; *citing Winter Haven Hosp., Inc. v. Liles*, 148 So.3d 507, 515 (Fla. 2d DCA 2014) and *Liberty Mut. Ins. Co.,* at 594. The *Kim* opinion noted the very "high standard of proof on the severe emotional distress element" as follows: "severe emotional distress means emotional distress of such a substantial quality or enduring quality[] that **no reasonable person in a civilized society should be expected to endure it."** *Kim,* at *5-6. The objective question is "whether the emotional distress the plaintiff suffered was **so intense or so long-lasting** that no reasonable person should be expected to endure it." *Id.* (emphasis added).

As a matter of law, Mr. Sorensen's act of providing photographs to a "nationally renowned civil rights advocate . . . considered by many to be the most influential Second Amendment state lobbyist in the United States" (Complaint, Paragraph 1) cannot be considered "beyond all possible bounds of decency" or as "shocking, atrocious, and utterly intolerable in a civilized community," especially

9

in the context of this important national debate on gun violence. The Complaint in this case simply does not allege such a level of outrage. Instead, the Complaint at Paragraph 96 contains only the barest, conclusory allegation that "Defendants' conduct has caused and will continue to cause severe emotional distress, shame, embarrassment, and humiliation to Hammer." These allegations fail to meet the *Twombly* standard.

There is not a hint of a threat in Mr. Sorensen's words. Any such notion is belied by other information in Mr. Sorensen's emails – his contact information, website, and an indication that he is an attorney-mediator who provides ADR services in Southern California, which is about 2,300 miles from Florida. This information was blacked out by Plaintiff's counsel in Exhibit 29 to the Complaint but was undeniably present in Mr. Sorensen's emails.

As alleged in her Complaint, the communications went to a person well familiar with firearms. Ms. Hammer is undeniably "a prominent advocate for the Second Amendment," the "first woman president of the NRA," and "a leader in championing gun safety training" (Complaint, Paragraph 19.) Thus, objectively, one would expect Ms. Hammer to understand the power of these weapons for which she advocates. Conversely, one would not expect such a person to be surprised by such photographs, given her experience in the gun business and the general availability of these photographs on the Internet.

In this case, there is no allegation of outrage sufficient to meet the *Twombly* standard. It is doubtful that a person with such an extensive knowledge of firearms would suffer a level of outrage to the point that no reasonable person in her position could bear it. Therefore, the tort of intentional infliction of emotional distress has not been pled sufficiently and should be dismissed.

### IV. Additional Defenses to Counts V and VI (Intrusion Upon Seclusion)

Intrusion upon seclusion is an infrequently used cause of action. It is but one small part of the overall concept of "invasion of privacy." *Allstate Ins. Co. v. Ginsberg*, 863 So. 2d 156, 161 (Fla. 2003). All of the broader invasion of privacy claims require some publication of a "personal matter" to a third party. *Id.* at 162. In comparison, the tort of "intrusion" is a claim "in which the focus is the right of a private person to be free from public gaze." *Id.* The elements for the tort of "intrusion" are as follows: (1) there must be a private quarter; (2) there must be some physical or electronic intrusion into that private quarter; and (3) the intrusion must be highly offensive to a reasonable person. *Stasiak v. Kingswood Co-op, Inc.*, 2012 WL 527537 (M.D. Fla. 2012).

Thus, Florida law requires that intrusion involve an act of "intruding into one's private quarters." *Ginsberg*, at 162*; see also Agency for Health Care Administration*, 678 So. 2d 1239, 1252 n. 20 (Fla. 1996). Another court described

"intrusion upon seclusion" as involving a "persistent course" of "hounding" or "harassment." *Goosen v. Walker*, 714 So. 2d 1149, 1150 (Fla. 4th DCA 1998).

In *Oppenheim v. I.C. System, Inc.,* 695 F.Supp. 1303, 1306-08 (M.D. Fla. 2010), a federal court construing Florida law determined that the prerequisite proof for the tort of intrusion was not met by dozens of unwanted phone calls. The *Oppenheim* court further held that the intrusion must be highly offensive to a reasonable person. *Id.* at 1309. That court likened the burden to that required by the tort of intentional infliction of emotional distress or outrage, in the sense that the tort for intrusion must also involve something so outrageous as to go beyond all possible bounds of decency. *Id.*

These determinations are questions of law for the court, not questions of fact. *Id.* In *Oppenheim*, the court ultimately concluded that "thirty-five to forty telephone calls to Oppenheim's residence over a period of approximately three months" was insufficient to plead this cause of action. *Id.* at 1310. "Those calls did not rise to the requisite level of outrageous and unacceptable conduct contemplated by the tort of invasion of privacy based on intrusion." *Id.* Similarly, in *Stoddard v. Wohlfahrt*, 573 So. 2d 1060, 1061-62 (Fla. 5th DCA 1991), a court held that an invasion of privacy claim should be dismissed where such claim was based on two telephone calls, one of which said "You're mine" and the other invited the recipient of the call to perform a sexual act on the caller. *Id.* at 1061. While finding that the

calls were "socially inexcusable", the court affirmed the dismissal of the case. *Id.*; *citing Kent v. Harrison*, 467 So. 2d 1114 (Fla. 2d DCA 1985) (involving more harassing phone calls than *Stoddard*, but affirming directed verdict for the defendant).

In the case at bar, the email and photographs did not relate in any way to private information of the plaintiff. The photographs are easily found on the Internet, and they were delivered to a publicized address for a prominent advocate of gun rights, not a person's private quarters. The email contained no private information regarding Ms. Hammer. Instead, the subject matter addressed an ongoing, highly publicized debate over the wisdom of regulating high powered firearms. Ms. Hammer, not Mr. Sorensen, brought this matter into the "public gaze" by both her tireless advocacy against regulating such weapons and also her public filing of a complaint in this case.

The counts of "intrusion" in this case fail to implicate any private matters within Ms. Hammer's private quarters. Moreover, the allegations fail to meet the extremely high bar for outrage, an element required to be pled for all of the counts of this Complaint, no matter how they are individually styled. Therefore, these counts attempting to allege the tort of intrusion upon seclusion should be dismissed as well.

## V. Conclusion.

The First Amendment is designed to encourage vigorous debate on important public issues. In this case, Mr. Sorensen chose a form of speech that did not include threats or violence. Instead, he forwarded actual photographs depicting the physical impact of weapons for which Ms. Hammer advocates. These photos were contained in two email delivered within thirty minutes to Ms. Hammer back in March 2018 at her public email address. These facts are insufficient to properly support the legal claims made in the Complaint. More significantly, however, all of this speech is protected by the United States and Florida Constitutions. Therefore, this case must be dismissed.

RESPECTFULLY SUBMITTED this 20th day of September, 2018.

/*s*/ Thomas M. Findley
THOMAS M. FINDLEY
Florida Bar No.: 0797855
Primary E-Mail: tfindley@bakerdonelson.com
Secondary E-Mail: jwarmack@bakerdonelson.com
BAKER, DONELSON, BEARMAN,
CALDWELL & BERKOWITZ, PC
Monroe-Park Tower
101 North Monroe Street, Suite 925
Tallahassee, Florida  32301
Telephone:  (850) 425-7500
*Counsel for Defendant,*
*Lawrence T. "LOL" Sorensen*

## **Certification Pursuant to Local Rule 7.1(C)**

The undersigned certifies that he has conferred with Plaintiff's counsel regarding this motion and Plaintiff's counsel opposes this Motion to Dismiss.

> /*s*/ Thomas M. Findley
> Attorney

## **Certification Pursuant to Local Rule 7.1(F)**

The undersigned certifies that the above motion is a total of 3,328 words.

> /*s*/ Thomas M. Findley
> Attorney

## **CERTIFICATE OF SERVICE**

 I HEREBY CERTIFY that a true and correct copy of the foregoing instrument has been furnished electronically via CM/ECF this 20th day of September, 2018, to:

Shane B. Vogt, Esquire
Bajo, Cuva, Cohen & Turkel - Tampa, FL
100 North Tampa Street
Suite 1900
Tampa, Florida  33602
shane.vogt@bajocuva.com
*Counsel for Plaintiff,*
*Marion P. Hammer*

          /*s*/ Thomas M. Findley
          THOMAS M. FINDLEY