UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF FLORIDA
TALLAHASSEE DIVISION

MARION P. HAMMER,

      Plaintiff,

Case No. 4:18-cv-00329-RH-CAS

v.

LAWRENCE T. "LOL"
SORENSEN, CHRISTOPHER
RISICA, HOWARD WEISS,
and PATRICK SULLIVAN,

      Defendants.
_____/

## **PLAINTIFF'S OPPOSITION TO SORENSEN'S MOTION TO DISMISS**

Pursuant to Federal Rule of Civil Procedure 12 and Local Rule 7.1, Plaintiff, Marion P. Hammer ("Hammer"), responds in opposition to the Motion to Dismiss [Doc. 28] (the "Motion") filed by Defendant, Lawrence T. "Lol" Sorensen ("Sorensen"), and states as follows:

### I.    Introduction

Dismissing this case would send the wrong message at a time when everyone needs to be reminded that there are limits to how people can treat those with whom they disagree. The legality of Mr. Sorensen's conduct is judged by what a "civilized community" considers "decent" and "tolerable." [*See* Doc. 28, pp. 8-9] Reaffirming the guideposts of decency and civility through cases such as this one is critical

because the Internet and social media have connected everyone on platforms where communication is effortless and instantaneous, yet detached and impersonal, and where the limits of what reasonable people can be forced to tolerate are devolving.

Not everything one says or does behind the veil of a computer or cell phone screen is automatically shielded by the First Amendment. People must be held accountable when they use the Internet to engage in *conduct* – not speech – that a civilized society should never tolerate and the First Amendment does not protect.

The ideals the First Amendment protects will be lost if people are allowed to use it as both a shield and a sword. Consequently, protected speech inherently excludes words and actions that are intended to intimidate, harass, and silence others:

> In a society where the expression of opinion is given the fullest protection, public figures must expect criticism that may be untrue, unjustified, or hurtful. They need not, however, passively accept statements or conduct transcending mere criticism which threaten personal or family safety… [such that]… personal abuse is not in any proper sense communication of information or opinion safeguarded by the Constitution, and its punishment as a criminal act would raise no question under that instrument.

*Smith v. State,* 532 So.2d 50, 53 (Fla. 2d DCA 1988) (*quoting Cantwell v. Connecticut*, 310 U.S. 296, 309-10 (1939)). Here, Mr. Sorensen's emails crossed the line. Legitimizing his actions by granting them free speech protection would be a disservice to the First Amendment.

It is undisputed that Mr. Sorensen sought out Ms. Hammer's e-mail address and "intentionally"[1] sent her two unsolicited e-mails that embedded graphic photos of gunshot victims to show her the "*handiwork of the assault rifles you support*." Mr. Sorensen sent pictures of mutilated human bodies to a 79-year-old woman he wrongfully blames for violent acts committed by criminals because he was angry and wanted to attack, intimidate, bully, and silence Ms. Hammer for her support of the Second Amendment.

Mr. Sorensen's contention that his subjective intent was to "express an opinion regarding the national debate on gun rights" is inconsequential at the dismissal stage. [*See* Doc. 28, p.7] Issues such as intent and whether a communication is a threat are questions of fact to be left to the jury. *U.S. v. Taylor*, 972 F.2d 1247, 1251 (11th Cir. 1992). Moreover, Mr. Sorensen's self-serving argument about his purpose rings hollow. Mr. Sorensen is an experienced attorney and mediator who certainly knows how to communicate effectively and elicit a dialogue with people of differing viewpoints. But that is not what Mr. Sorensen chose to do. He did not "ask [Ms. Hammer] to consider the damage that can be done by firearms…" [*See* Doc. 28, p. 3] His e-mails are devoid of any mention of "gun control." He did not express any ideas or opinions on regulating assault rifles. In fact, he did not invite Ms. Hammer to debate or comment on *anything*. Mr. Sorensen

---

[1] *See* Doc. 26, p. 3.

was not engaged in anything akin to "anti-war protests." [*Id.* p. 4] His e-mails did not do anything to "inform the public [or] protest violence." [*Id.*]

There are countless legitimate ways Mr. Sorensen could have expressed his opinions on gun control or tried to start a dialogue with Ms. Hammer. Sending her photos of bodies torn apart by criminals without any expression of an opinion about gun control is not one of them. Ms. Hammer saw Mr. Sorensen's emails as a threat—a graphic depiction of what was going to happen to her because of her support for the Second Amendment. [Doc. 1 ¶¶ 5, 7, 8, 33, 40, 49] It is certainly plausible that a reasonable person would likewise perceive Mr. Sorensen's e-mails as harassment, a threat, and utterly intolerable in a civilized community.

## II.   The First Amendment Affords Sorensen No Protection

The statutory, equitable, and common law claims asserted by Ms. Hammer are not barred by the First Amendment. Her claims are based on *conduct* directed specifically at her, not protected public speech. Accordingly, Mr. Sorensen's reliance upon cases such as *Falwell* and *Snyder* [Motion pp. 3, 5] is misplaced.

The conduct prohibited by Florida's stalking statute, § 784.048, *Florida Statutes*, "is clearly criminal and is unprotected by the First Amendment." *Bouters v. State*, 659 So.2d 235, 237 (Fla. 1995) ("While the First Amendment confers on each citizen a powerful right to express oneself, it gives the [citizen] no boon to jeopardize the health, safety, and rights of others."). The statute prohibits unprotected conduct,

which has never been thought to present a First Amendment problem.[2] *Burroughs v. Corey*, 92 F.Supp.3d 1201, 1208 (M.D. Fla. 2015) (*citing U.S. v. Stevens*, 559 U.S. 460, 468-69 (2010)).

Statements uttered predominantly to communicate express or *implied*[3] threats are not constitutionally protected. *Eckhardt*, 466 F.3d at 943-44 (*citing Parker v. Levy*, 417 U.S. 733, 760 (1974)). Similarly, where the overreaching purpose of communications is to harass and frighten, they are not protected speech. *Id.* at 944. Threats and harassment are forms of conduct the First Amendment does not protect:

> Harassment is not speech: it is wrongful conduct. The Florida Supreme Court has recognized that the government has a strong and legitimate interest in preventing the harassment of individuals… Prohibiting harassment is not prohibiting speech, because harassment is not protected speech. Harassment is not communication, although it may take the form of speech.

*Animal Rights Foundation of Florida, Inc. v. Siegel*, 867 So.2d 451, 464 (Fla. 5th DCA 2004) (concurring opinion) (quotations and citation omitted). "Because harassment is improper conduct, it may be prohibited, or at least regulated, through an injunction." *Id.* (*citing Kimball v. Florida Dep't of Health & Rehabilitative Servs.*, 682 So.2d 637 (Fla. 2d DCA 1996) (holding that persons subject to

---

[2] Similarly, the "thrust" of Federal statutes such as the Telephone Harassment Act is "to prohibit communications intended to instill fear in the victim, not to provoke a discussion about political issues of the day." *U.S. v. Eckhardt*, 466 F.3d 938, 943 (11th Cir. 2006).

[3] At minimum, Mr. Sorensen's emails qualify as implied threats.

harassment may obtain injunctive relief); *see also Gilbreath v. State*, 650 So.2d 10, 12 (Fla. 1995) (prohibiting harassment is not prohibiting speech because harassment is not protected speech).

Speech uttered incident to a tort also is actionable and can be prohibited without violating the First Amendment. *Murtaugh v. Hurley*, 40 So.3d 62, 65-66 (Fla. 2d DCA 2010); *Chevaldina v. R.K./FL Management, Inc.*, 133 So.3d 1086 (Fla. 3d DCA 2014); *Zimmerman v. D.C.A. at Welleby, Inc.*, 505 So.2d 1371 (Fla. 4th DCA 1987).

Mr. Sorensen's contention that Ms. Hammer is seeking a prior[4] restraint is also flawed because any injunction entered in this proceeding would be imposed after a trial. *Advanced Training Systems, Inc. v. Caswell Equipment Co.*, 352 N.W.2d 1, 11 (Minn. 1984) ("[T]he special vice of a prior restraint is that communication will be suppressed, either directly or by inducing excessive caution in the speaker, before an adequate determination that it is unprotected by the First Amendment.") (*citing Pittsburgh Press Co. v. Commission on Human Relations*, 413 U.S. 376, 390 (1973)); *Balboa Island Village Inn v. Lemen*, 156 P.3d 339, 349 (Cal. 2007) ("[A]n order based on a continuing course of repetitive conduct, following a final judicial determination the enjoined speech is unprotected by the

---

[4] The Court already addressed Ms. Hammer's request for a *preliminary* injunction. [*See* Doc. 26]

First Amendment, has been held to not be a prior restraint if it is clear and sweeps no more broadly than necessary."); *Alexander v. U.S.*, 509 U.S. 544, 552-54 (1993).

## III. The Court Does Not Lack Subject Matter Jurisdiction

This Court has subject matter jurisdiction to adjudicate a claim under § 784.0485(1), *Florida Statutes*, which creates a private right of action for an injunction against harassment and cyberstalking. The reference in this statute to a victim having "standing in the circuit court" does not limit this court's jurisdiction. § 784.0485(1)(a), *Fla. Stat.*

A state legislature's grant of exclusive jurisdiction to a specific state court does not bar federal courts sitting in diversity jurisdiction from possessing subject matter jurisdiction. *Roberts & Schaefer Co. v. Hardaway Co.*, 945 F. Supp. 247, 250 (M.D. Fla. 1996). In a diversity case, a plaintiff should obtain the same relief as would be available in the state court. *Id.* at 251; *see also American Enterprises Collision Center, Inc. v. Travelers Property and Casualty Co. of America*, 2010 WL 11507334, *2 (M.D. Fla Feb. 5, 2010).

*Harvick*, cited by Mr. Sorensen [Doc. 28, p. 6], is a *pro se* case based on original (not diversity) jurisdiction. In *Harvick*, a claim under § 784.048, *Florida Statutes*, was dismissed based on lack of jurisdiction and failure to properly plead. But that decision has no analysis of the jurisdictional issue – particularly the issue addressed in *Roberts* and *American Enterprise* – and the pleading deficiencies

supporting the dismissal (which the decision does not specifically identify) are not present here. Ms. Hammer's pleading contains all the information required by § 784.0485(3), it is verified, and it is further supported by Ms. Hammer's Declaration [Doc. 4].

### IV. Mr. Sorensen Violated § 784.048

Mr. Sorensen's two e-mails transmitting gruesome images of gunshot victims qualify as harassment and cyberstalking under section 784.048, Florida Statutes. These emails comprise a series of acts over a period of time, however short, that communicated images and were directed to Ms. Hammer, causing substantial emotional distress and serving no legitimate purpose. §784.048(1)(a)-(b), (d), *Fla. Stat.* Each of the required elements of an action for an injunction under the statute are pleaded. Mr. Sorensen's arguments to the contrary are unavailing.

First, Mr. Sorensen's contention that a sufficient course of conduct is not alleged misses the mark. A "course of conduct" under the statute is established by just **two** similar acts over a period of time, "however short." *T.B. v. State*, 990 So.2d 651, 654 (Fla. 4th DCA 2008); *Jeter v. McKeithen*, 2015 WL 3747690, *4 (N.D. Fla. June 13, 2015).

Second, receiving unsolicited graphic images of gunshot victims would cause any reasonable person in Ms. Hammer's shoes to suffer substantial emotional distress. *Leach v. Kersey*, 162 So.3d 1104, 1106 (Fla. 2d DCA 2015) (holding that

whether a communication causes substantial emotional distress is governed by a reasonable person standard); *Goudy v. Duquette*, 112 So.3d 716, 717 (Fla. 2d DCA 2013); *Williams v. City of Minneola*, 575 So.2s 683 (Fla. 5th DCA 1991) (stating that gratuitous display of autopsy photos can cause severe emotional distress).  The operative situation in which Mr. Sorensen's e-mails must be viewed include the increasingly threatening social climate where people affiliated with the NRA have been and are under attack.  [Doc. 1 ¶¶ 7, 22-28, 30-32, 40-44]

      Third, Ms. Hammer plausibly alleges Mr. Sorensen's emails served no legitimate purpose.  Contrary to what is argued in the Motion [p. 7], Ms. Hammer does dispute that Mr. Sorensen's "intent was to express an opinion regarding the national debate on gun rights."  In fact, his emails express no such "opinion."  Rather, Mr. Sorensen forced Ms. Hammer to unwillingly view photos of gunshot victims as soon as she opened[5] his emails with misleadingly innocuous subject lines ("*Assault Rifle Support Results*" and "*One more instructive photo*") that also contained thinly-veiled threats about the "handiwork" of assault rifles and the "destruction" they cause.  As set forth above, Mr. Sorensen is an experienced attorney well-capable of using the English language to convey his arguments and opinions.  His failure to use his professional skills to express anything resembling an opinion, thought, or request

---

[5] The photos at issue were embedded in the bodies of Mr. Sorensen's emails.  They were not attachments Ms. Hammer had to open to view.

about gun control speaks volumes as to his true intent. Regardless, a jury should decide the legitimacy of Mr. Sorensen's intent and purpose.

Fourth, Ms. Hammer alleges that Mr. Sorensen's emails communicated images and language that conveyed a threat. [Doc. 1, ¶¶ 5, 49] These images of gunshot victims were sent to one person solely to show the "handiwork" of assault rifles in the midst of a highly-charged and violent social climate. Such images and the accompanying text "connote something they do not literally say, yet both the actor and the recipient get the message." *Planned Parenthood of Columbia/Williamette, Inc. v. American Coalition of Life Activists*, 290 F.3d 1058, 1085 (9th Cir. 2002). When communications containing such images are sent privately and targeted at a single individual—as is the case here—it further supports the conclusion that a threat exists. *Id.* at 1085-86. Viewed in full context, images such as those Mr. Sorensen directed to Ms. Hammer are not political hyperbole, nor are they merely vituperative, abusive, and inexact. *Id.* at 1085. Consequently, the act of sending such images is conduct, not speech. *Id.* at 1087. Holding Mr. Sorensen accountable for communicating these images to intimidate Ms. Hammer from advocating for the Second Amendment is proper and does not impinge on legitimate protest or advocacy. *Id.* at 1088.

## V. Harassment Can Be Enjoined

As set forth above (pp. 5-6), harassment is actionable and can be enjoined. *Kimball,* 682 So.2d at 639; *Gilbreath*, 650 So.2d at 12; *see also Murrell v. The Florida Bar*, 122 So.2d 169 (Fla. 1960). Moreover, this suit falls into the class of cases where equity compels a remedy. The availability of injunctive relief to protect personal liberty (regardless of the label under which it is sought) is not novel:

> Personal liberty and private property are fundamental rights in this country. The very purpose of law is to protect these rights. Any unlawful interference with them by false statement, acts of coercion, intimidation, malice or overt implications that threaten mischief or injury to them may be enjoined.

*Paramount Enterprises v. Mitchell*, 140 So. 328, 332-33 (Fla. 1932).

Ms. Hammer's claim for harassment against Mr. Sorensen is valid because his e-mails are a form of intimidation and threats against her for her political views and intended to chill her free speech. Hammer's First Amendment rights are not just part of her personal liberty; her free speech is also a public right the First Amendment protects. *Richmond Newspapers, Inc. v. Virginia*, 448 U.S. 555, 574 (1980) (stating that freedom of speech, the right to assemble and the right to petition the government for a redress of grievances are "expressly guaranteed freedoms [which] share a common core purpose of assuring freedom of communication on matters relating to the functioning of government."); *Time, Inc. v. Hill*, 385 U.S. 374, 389 (1967)

(freedom of the press is guaranteed "not for the benefit of the press so much as for the benefit of all of us").

An aggrieved party can assert a cognizable claim for injunctive relief prohibiting harassment based on criminal acts accompanied by a recognized ground for equitable relief, such as protecting public rights. *Kamau v. State*, 2012 WL 5390001, *8 (N.D. Fla. Oct. 1, 2012); *Polonczyk v. Gates*, 2017 WL 1164726, *5 (N.D. Fla. Mar. 16, 2017); *Syfo Water Co. v. Chakoff*, 182 So.2d 17, 18 (Fla. 3d DCA 1966). *Syfo* recognizes that "where intervention of equity is warranted to protect civil rights or property interests and where criminal prosecution is inadequate to effect this purpose, a crime or statutory offense may be enjoined." 182 So.2d at 18-19. A subsequent decision by Florida's Third DCA clarified that even though threatened acts might result in criminal violations, this should not prevent an equity court from exercising its traditional jurisdiction, "particularly"[6] when it is alleged that the law enforcement agencies refused to take legal cognizance of the alleged threatened criminal action. *Drake v. Henson*, 448 So.2d 1205, 1206 (Fla. 3d DCA 1984). In analyzing *Syfo*, Florida's First DCA recognized that "[o]ur state, therefore, has fallen in step with the broadly accepted doctrine that 'where an injunction is necessary for the protection of public rights … or welfare, the criminality of the acts

---

[6] "Particularly" denotes that unheeded complaints to law enforcement are not a requisite to relief.

complained of does not bar the remedy by injunction, and the court will consider the criminality of the act only to determine whether, under the particular circumstances, equitable intervention is necessary.'" *State Bd. of Funeral Directors and Embalmers of Fla. v. Evans*, 256 So.2d 574, 577 (Fla. 1st DCA 1972) (internal quotation marks and citation omitted).

Mr. Sorensen's reliance upon *Khani*, *Cummings*, and *Scelta* [Motion p. 8] is misplaced. *Khami* and *Cummings*, like *Harvick*, involved *pro se* parties who presumably did not raise the legal arguments set forth herein before their claims for harassment were dismissed. Certainly, these decisions do not analyze any of the precedent set forth above. *Khami* baldly cites to *Cummings*. And *Cummings* is devoid of any description of the allegations supporting the "actionable harassment" claim, as well as any legal analysis supporting the dismissal. *Scelta* specifically addresses a claim for "common law *sexual* harassment" based on an "underlying wrong allegedly committed by an employee in a negligent supervision or negligent retention claim." 57 F.Supp.2d at 1338, 1348 (emphasis added). That claim is not at issue here.

These cases Mr. Sorensen relies upon are markedly different than this case. They all involve specious clams (mostly by *pro se* claimants) that *factually* lacked justification for the law to afford relief. Here, the facts at issue compel a remedy which the law should and does provide. The very purpose of law is to protect

personal liberties and rights, such as those Ms. Hammer alleges were violated. *Paramount*, 140 So. at 332-33. Consequently, Mr. Sorensen's unlawful interference with those rights is actionable harassment that can and should be enjoined. *Id.*

**VI.  The "Impact Rule" Does Not Bar Hammer's Claim**

Mr. Sorensen incorrectly seeks refuge under the "impact rule," which he claims bars any action for emotional distress if the distress did not result from physical harm. This argument fails because the impact rule "does not apply to recognized intentional torts that result in predominantly emotional damages, including the intentional infliction of emotional distress, defamation, and invasion of privacy." *Rowell v. Holt*, 850 So.2d 474, 478 N. 1 (Fla. 2003) (internal citations omitted). "[T]o recover damages for mental or emotional distress for a **negligence** claim, the injury must flow from a physical injury or physical impact." *Jenks v. Naples Community Hospital, Inc.*, 829 F.Supp.2d 1235, 1257 (M.D. Fla. 2011) (emphasis added).

The impact rule simply does not apply to recognized torts in which damages often are predominantly emotional, such as intentional infliction of emotional distress and invasion of privacy. *Rowell*, 850 So.2d at 478; *see also, Kush v. Loyd,* 616 So.2d 415, 422 (Fla. 1992) (citing *Restatement (Second) of Torts* §§ 569, 570, 652H cmt.b (1977)).

## VII. Ms. Hammer's Intentional Tort Claims Are Actionable

Florida law governing intentional infliction of emotional distress recognizes that this tort compels a remedy when revilement is inflicted upon victims such as Hammer. *Nims v. Harrison*, 768 So.2d 1198, 1201 (Fla. 1st DCA 2000). Conduct sufficient to state a claim for the intentional infliction tort has been described as "intentionally harmful conduct which would otherwise go unpunished, and which, in cause and effect, can hardly be distinguished from other intentional torts such as assault." *Metropolitan Life Ins. Co. v. McCarson*, 429 So.2d 1287 (Fla. 4th DCA 1983), *approved in part, quashed in part*, 467 So.2d 277 (Fla. 1985). Mr. Sorensen's conduct qualifies and should not go unpunished.

The outrageousness requirement for this tort has been met in situations involving displaying autopsy photos (*Williams*, *infra*) and vicious verbal attacks. *Dependable Life Insurance Co. v. Harris*, 510 So.2d 985 (Fla. 5th DCA 1987). Severe emotional distress exists when no reasonable person should be expected to endure it. *Restatement Second, Torts* § 46; *Metropolitan Life Ins. Co. v. McCarson*, 467 So.2d 277, 278 (Fla. 1985). No reasonable person should be expected to endure the distress caused by opening an innocuously titled email only to immediately be forced to view photos of mutilated bodies[7] sent to intimidate, harass, and threaten.

---

[7] Mr. Sorensen's supposition about whether Ms. Hammer would be "surprised" by the photos he sent is offensive and irrelevant to a motion to dismiss. Ms. Hammer's

Mr. Sorensen's suggestion [Motion p. 11] that anyone with knowledge of firearms is somehow automatically immune to the distress caused by being forced to look at dead and mutilated bodies is patently absurd.

An intrusion upon seclusion claim is not as limited as Mr. Sorensen suggests. Mr. Sorensen concedes that this tort has been extended to electronic intrusions into one's solitude. *See* Motion pp. 12-13; *see also Zirena v. Capital One Bank (USA) NA*, No. 11-24158-CIV, 2012 WL 843489 at *2 (S.D. Fla. Feb. 2, 2012) (defining the intrusion tort as including electronically intruding into one's private quarters and holding that harassing phone calls were actionable). Ms. Hammer received Mr. Sorensen's e-mails at her *personal* (AOL) e-mail address. By opening them, she unwillingly was exposed to images she did not want to see. There is a recognized interest in "protecting the well-being, tranquility, and privacy of the home [which] is certainly of the highest order in a free and civilized society." *Gilbreath*, 650 So.2d at 12 (*citing Carey v. Brown*, 447 U.S. 455, 471 (1980). The intrusion upon seclusion tort serves to protect this recognized interest:

> One important aspect of residential privacy is protection of the unwilling listener [or here, viewer]. Although in many locations, we expect individuals simply to avoid speech they do not want to hear, the home is different…[A] special benefit of the privacy all citizens enjoy within their own walls, which the State may legislate to protect, is an ability to avoid intrusions. Thus, we have

---

advocacy for the Second Amendment has no correlation to exposure to the gruesome photos of crime victims Mr. Sorensen apparently peruses on the Internet.

> repeatedly held that individuals are not required to welcome unwanted speech into their own homes and that the government may protect this freedom.

*Id.* at 12-13 (*citing Frisby v. Schultz*, 487 U.S. 474, 484-85 (1988)). Ms. Hammer should not be forced to welcome and accept the intrusion of Mr. Sorensen's unwanted e-mails. Her claim for intrusion upon seclusion should proceed.

## CONCLUSION

Mr. Sorensen engaged in actionable conduct that the First Amendment does not protect. His hindsight, self-serving claim that he intended to engage in a dialogue about gun control or a form of public protest does not matter at the dismissal stage and, in any event, contradicts the content, manner and method of his communications to Ms. Hammer. As a society, we should not tolerate this type of behavior. The longer we turn a blind eye to it, the more prevalent and outrageous this conduct will become.

Respectfully submitted, this 4th day of October, 2018.

> */s/ Shane B. Vogt*
> Kenneth G. Turkel
> Florida Bar No. 867233
> E-mail: kturkel@bajocuva.com
> Shane B. Vogt - FBN 257620
> E-mail: svogt@bajocuva.com
> BAJO | CUVA | COHEN | TURKEL
> 100 North Tampa Street, Suite 1900
> Tampa, Florida 33602
> Telephone: 813-443-2199
> Fax: 813-443-2193
> *Attorneys for Plaintiff*

## CERTIFICATE OF COMPLIANCE

The undersigned hereby certifies, pursuant to Local Rule 7.1(F), that this Motion/Memorandum contains 3,887 words, based on the word count of the word-processing system used to prepare the motion/memorandum.

*/s/ Shane B. Vogt*
Attorney

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on October 4, 2018, the foregoing document was filed with the Court's CM/ECF system, which will send electronic notice to all counsel of record.

*/s/ Shane B. Vogt*
Attorney